TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
POONAM G. KUMAR (Cal. Bar No. 270802)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0719
      Facsimile: (213) 894-6269
      E-mail:    poonam.kumar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           No. CR 18-760-GW-2

          Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                    VAHAN ALOYAN
             v.

VAHAN ALOYAN,

          Defendant.

     1.   This constitutes the plea agreement between VAHAN ALOYAN

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authorities.

                     DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and

provided by the Court, appear and plead guilty to count one of the

indictment in United States v. Hmayakyan, et al., CR No. 18-760-GW-2,

which charges defendant with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349.

   b. Not contest facts agreed to in this agreement.

   c. Abide by all agreements regarding sentencing contained in this agreement.

   d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

   e. Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-043 or another order, rule, or statute. Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely. Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

    i. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

    ii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

f.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial

Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

k.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

l.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

m.   Defendant further agrees:

i.   Truthfully to disclose to law enforcement officials, at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to immediately and irrevocably forfeit, on behalf of defendant and any entity in which defendant has ever held an ownership interest or has ever served as an officer, director, manager, partner, trustee or other representative (which entities are collectively referred to herein as the "defendant entities" and include, without limitation, The Liquor Spot, Inc.) all right, title, and interest in and to such items, (collectively referred to herein as the "Forfeitable Property"), which Forfeitable Property includes but is not limited to the following assets seized by law enforcement officials:

• $299,166.83 as substitute *res* representing the net proceeds of the sale of approximately 37,035 bottles of alcohol seized from "The Liquor Spot";

• $56,817.77 seized from Bank of America account ending in 6755;

4

1       •       $40,521.59 seized from Wells Fargo account ending in 5452;

2       •       Department of Alcoholic Beverage Control License Number
3  550510 issued to "The Liquor Spot";

4       •       $12,821.00 in U.S. Currency seized from a Glendale,
5  California residence;

6       •       $12,961.00 in U.S. Currency seized from the "The Liquor
7  Spot"; and

8       •       Miscellaneous watches and jewelry seized on or about
9  September 8, 2015 during the execution of a State of California
10 search warrant.

11              ii.   To the Court's entry of an order of forfeiture at
12 or before sentencing with respect to the Forfeitable Property.

13              iii. To withdraw any claim of interest previously
14 filed by defendant personally or on behalf of any of the defendant
15 entities (including The Liquor Spot, Inc.) with respect to the
16 Forfeitable Property in either administrative or civil judicial
17 proceedings.

18              iv.   Not to contest, either in a personal capacity or
19 on behalf of any of the defendant entities (including The Liquor
20 Spot, Inc.), any administrative forfeiture proceedings, criminal
21 judicial proceedings, or civil judicial proceedings commenced against
22 or pertaining to the Forfeitable Property.

23              v.    If defendant submitted a claim and/or petition
24 for remission for all or part of the Forfeitable Property on behalf
25 of himself or any of the defendant entities (including The Liquor
26 Spot, Inc.), defendant, on behalf of himself and the defendant
27 entities, shall and hereby does withdraw any such claims or
28 petitions, and further agrees to waive any right he or the defendant

entities may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.

      vi.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of stipulations for the entry of consent judgments of forfeiture and the completing of any other legal documents required for the transfer of title to the Forfeitable Property to the United States.

      vii. With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives (i) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (ii) all constitutional and statutory challenges in any manner (including by direct appeal, habeas corpus or any other means) to any forfeiture carried out in accordance with this agreement on any grounds; and (iii) all constitutional, legal and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

      viii. Not to assist any other individual or entity in any effort falsely to contest the forfeiture of the Forfeitable Property.

ix.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

x.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

xi.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

xii.  That forfeiture of the Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, the following must be true: (1) beginning at least as early as November 2014 and continuing through in or about September 2015, there was an agreement between two or more persons to commit bank fraud; (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

5.    The conspiracy to which defendant has agreed to plead guilty involves an agreement to commit the substantive offense of bank fraud (18 U.S.C. § 1344(2)).  The elements of bank fraud are as follows:  (1) defendant knowingly carried out a scheme or plan to obtain money or property from financial institutions by making false statements or promises; (2) defendant knew that the statements or promises were false; (3) the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property; (4) the defendant acted with the intent to defraud; and (5) the financial institutions were federally-insured.

<u>PENALTIES AND RESTITUTION</u>

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years of imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed. The parties currently believe that the applicable amount of restitution is approximately $3,500,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

     10.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

1

FACTUAL BASIS

2      11.  Defendant admits that defendant is, in fact, guilty of the

3  offense to which defendant is agreeing to plead guilty.  Defendant

4  and the USAO agree to the statement of facts provided below and agree

5  that this statement of facts is sufficient to support a plea of

6  guilty to the charge described in this agreement and to establish the

7  Sentencing Guidelines factors set forth in paragraph 13 below but is

8  not meant to be a complete recitation of all facts relevant to the

9  underlying criminal conduct or all facts known to either party that

10 relate to that conduct.

11      Beginning at least as early as November 2014 and continuing

12 through in or about September 2015, defendant agreed with at least

13 one other person to commit bank fraud.  Defendant became a member of

14 the conspiracy knowing of its object and intending to help accomplish

15 it.  Specifically, defendant and others knowingly and with the intent

16 to defraud executed a scheme to obtain money, funds, credits, assets,

17 and other property owned by, and under the custody and control of

18 financial institutions, including, but not limited to, Bank of

19 America, N.A. ("Bank of America"), Barclays, BMO Harris Bank, N.A.

20 ("BMO Harris"), Capital One (USA), N.A. ("Capital One"), Citibank

21 N.A. ("Citibank"), Comenity Bank ("Comenity"), Golden 1 Credit Union

22 ("Golden 1"), JP Morgan Chase Bank, N.A. ("Chase"), Synchrony Bank

23 ("Synchrony"), U.S. Bank, and Wells Fargo Bank Northwest, N.A.

24 ("Wells Fargo") (collectively "the victim financial institutions"),

25 by means of false and fraudulent pretenses, representations, and

26 promises, and the concealment of material facts.   Accounts held at

27 the victim financial institutions were insured by the Federal Deposit

28 Insurance Corporation.

11

To execute this scheme, defendant, his co-defendants, and others made and caused to be made purchases at various locations on busted out credit cards, either newly-acquired or credit card accounts already opened.  To bust out newly-acquired credit cards, defendant's co-conspirators opened credit card accounts in their own name with the victim financial institutions ("co-conspirator cardholder(s)"). In so doing, these co-conspirator cardholders represented that they would pay the balance charged to the credit card when, in truth and in fact, they had no intention of paying the credit card balance. Further, they opened the credit card accounts knowing that they intended to bust out the credit cards issued by the victim financial institutions.  For all of the credit cards, whether newly acquired or previously issued, the conspirator cardholders would bust out a credit card by doing the following:  they would incur charges up to or near the authorized limit of the credit card without any intention of paying the balance charged to the card.  They would submit a fraudulent payment for the balance due, including by depositing a check drawn on an account with insufficient funds, and wait for the victim financial institution to credit the payment to defendant's account.  After the payment was posted to the conspirator cardholder's account (which would result in the restoration of the credit line) but before the victim financial institution had discovered that the payment was fraudulent, the conspirator cardholder would incur additional charges up to the credit limit of the card.  As a result of this bust out activity, the credit cards incurred charges above the credit limit.

To carry out this scheme, defendant, knowingly and with the intent to defraud, caused co-conspirator cardholders to incur some

charges at various locations, including, but not limited to, Southern Wine & Spirits ("SWS"), Liquor Spot, and Bhindi Jewelers ("Bhindi"). The purchases at SWS were of alcohol and were made on behalf of Liquor Spot, a liquor store that defendant managed from at least 2014 until 2015.  Defendant, along with others, signed as the authorized agent of Liquor Spot at the time the goods were purchased and picked up at Liquor Spot.  For example, in furtherance of the conspiracy, on or about November 29, 2014, defendant accompanied a cardholder co-conspirator to make a purchase totaling $8,878.97 at SWS on behalf of Liquor Spot on a Capital One credit card ending in 5954, which had been busted out.  Defendant signed for the purchase on behalf of Liquor Spot.  In total, between in or about November 2014 and September 2015, a total of approximately $778,836.08 in charges were made at Liquor Spot by co-conspirator cardholders.  The co-conspirators intended to cause losses to the victim financial institutions through the use of busted out credit cards at the SWS of approximately $1,770,235.58.

In addition to making purchases at SWS and in furtherance of the conspiracy, purchases on busted out credit cards were made in-store at the Liquor Spot.  For example, on or about December 16, 2014, a charge of $9,849.00 was made on a Capital One credit card ending in 5820 in the name of V.P., which had been busted out, at Liquor Spot. Between December 2014 and September 2015, a total of $260,919.21 was charged or was attempted to be charged at the Liquor Spot on busted out credit cards.  The co-conspirators intended to cause losses to the victim financial institutions through the use of busted out credit cards at the Liquor Spot of approximately $1,811,116.02.

In addition to making purchases at SWS and the Liquor Spot and in furtherance of the conspiracy, the co-conspirators cardholders also made purchases at Bhindi.  For example, in furtherance of the conspiracy, on or about August 26, 2015, a co-conspirator cardholder made a payment of approximately $26,737 on a busted out credit card towards the purchase of three Rolex watches at Bhindi.

On or about September 9, 2015, a search warrant was executed at defendant's home.  During that search, nineteen unauthorized and counterfeit access devices, which were part of the same course of conduct that defendant undertook in furtherance of the conspiracy, were located.  The intended loss associated with these credit card numbers, social security numbers, and California driver's license numbers is approximately $108,448.71.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

14

| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
|---|---|---|
| Specific Offense Characteristics: | | |
| Loss of No Less than $550,000 and No More than $9,500,000[1] | +14 to +18 | [U.S.S.G. § 2B1.1(b)(1)(J)] |
| 10 or More Victims | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

       a.   The right to persist in a plea of not guilty.

       b.   The right to a speedy and public trial by jury.

       c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be

---

[1] The parties agree that the intended loss resulting from this scheme is no less than $550,000 and not more than $9,500,000, but do not agree as to the specific intended loss figure within that range and reserve their rights to argue as to the appropriate loss at the time of sentencing.

represented by counsel -- and if necessary have the Court appoint
counsel -- at every other stage of the proceeding.

        d.   The right to be presumed innocent and to have the
burden of proof placed on the government to prove defendant guilty
beyond a reasonable doubt.

        e.   The right to confront and cross-examine witnesses
against defendant.

        f.   The right to testify and to present evidence in
opposition to the charges, including the right to compel the
attendance of witnesses to testify.

        g.   The right not to be compelled to testify, and, if
defendant chose not to testify or present evidence, to have that
choice not be used against defendant.

        h.   Any and all rights to pursue any affirmative defenses,
Fourth Amendment or Fifth Amendment claims, and other pretrial
motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.   Defendant understands that, with the exception of an appeal
based on a claim that defendant's guilty plea was involuntary, by
pleading guilty defendant is waiving and giving up any right to
appeal defendant's conviction on the offense to which defendant is
pleading guilty.  Defendant understands that this waiver includes,
but is not limited to, arguments that the statute to which defendant
is pleading guilty is unconstitutional, and any and all claims that
the statement of facts provided herein is insufficient to support
defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 28 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $3,500,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

19.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 28 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $3,500,000.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

20.  Defendant agrees that if, after entering a guilty plea

17

pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

21. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

22. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

23. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this

18

agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

25.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions

different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          29.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    TRACY L. WILKISON
     Acting United States Attorney
9

10   _____         10/13/2021

11   POONAM G. KUMAR                          _____
     Assistant United States Attorney        Date

12   _____         10-13-2021

13   VAHAN ALOYAN                             _____
     Defendant                               Date

14   _____         10/13/21

15   JILBERT TAHMAZIAN                        _____
     Attorney for Defendant VAHAN ALOYAN     Date

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          10-13-2021
VAHAN ALOYAN                              _____
Defendant                                Date

23

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am VAHAN ALOYAN's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____                    ___10/13/21_____
JILBERT TAHMAZIAN                                   Date
Attorney for Defendant VAHAN ALOYAN

24